HIGGINS, Justice.
 

 On October 18, 1943, the members of this Court ordered the resp.ondent attorney-
 
 *1047
 
 at-law to show cause on November 8, 1943, why he should not be held in contempt of the authority of this Court for violating the provisions of Section 4 of our Rule X by using, in his application or petition for a writ of certiorari or review to the Court of Appeal of the First Circuit, language which was insulting and irrelevantly critical of two of the judges of that court.
 

 On the return day, the counsel appeared in proper person and excepted to the jurisdiction of this Court to punish him for contempt because our authority to do so was restricted by Section 17 of Article XIX of the Constitution of Louisiana of 1921 and Revised Statutes § 125 (Dart’s General Statutes, Par. 453) and, in the alternative,
 
 that in the event
 
 the Court should hold that Section 4 of Rule-X was applicable- to his 'case that that Section of the Rule- -was -unconstitutional being in violation of Section 17 of Article XIX of the Constitution of Louisiana of 1921 and Sections 3 and 5 of Article I of our Constitution, granting to persons the right of freedom of speech and to petition for redress of any wrong, respectively.
 

 He fildd exceptions of no right and no cause of action on the ground that the members of this Court were not sitting at the time he filed his application with the clerk and that the alleged offensive words were not used in relation to any Justice of this Court.
 

 In the event that it should be held that Section 4 of the Rule is constitutional, he pleaded that it is inapplicable to his case because the Court, under the provisions of that’Section,-must order the offensive document returned as a condition precedent to its right and authority to punish for contempt, and having failed to order the return of the document, the Court is estopped from imposing any penalty.
 

 The defendant also pleaded that the words objected to in his application are not abusive, vituperative, or insulting and urges the truthfulness of the statements he made concerning the two judges and that he was justified in doing so because they accepted the theory of a witness who based his opinion entirely on hearsay evidence and totally ignored the jurisprudence of our State in annulling a judgment in his clients’ favor for the sum of $6,000 for the death of their son and dismissing the suit. In conclusion, in his return, he states:
 

 “12. Finally, if in presenting and seeking the truth, justice and equality, if in presenting a grievous transgression of justice, in non-offensive per se language, if in calling to the proper supervisory court the fact that an inferior court has said to Guidry, a poor shipcarpenter, uneducated, whose opponent is John Folkes, a well-known game warden, that a judgment involving facts could not be disturbed, but that on the same day, it says to Oscar and Irma Lanoix, an old couple who have lost their son, and whose opponent is an insurance compaiiy, while I cannot find any error in the facts and law, still I find a theory of a witness, which I like, and for that reason, I will take away your judgment of $6,000.00,
 
 I have offended the dignity of this Court to the extent that it wfishes to leap over the restrictions placed upon it by the Constitution and Statutes, and the privileges and gwmmtees granted
 
 
 *1049
 

 litigants, then I must say that I have no apology or retraction to make, and that I would -rather be punished for contempt, than abandon the rights for which I have always fought
 
 * * (Italics ours.)
 

 In oral argument before the Bar, the respondent reiterated his statements against the two judges and said that he would rather go to jail than to retract them or apologize for them and requested the Court, in the event he were found guilty, to grant him sufficient time to adjust his affairs if he were sentenced to serve a period of incarceration.
 

 Section
 
 17
 
 of Article XIX of the Constitution of Louisiana reads:
 

 “The power of the courts to punish for contempt shall be limited by law.”
 

 Revised Statutes §§ 124 and 125 (Dart’s General Statutes, Pars. 452 and 453) provide, respectively, as follows:
 

 “124. If any counsellor or attorney at law shall be guilty of any contempt towards any court of this State, he may be punished therefor by fine not exceeding one hundred dollars, or by imprisonment not exceeding twenty-four hours, or both, at the discretion of the court; and if the offender be guilty more than once of the like offense towards the same court, he may be punished therefor by fine not exceeding two hundred dollars, not less than one hundred dollars, or by imprisonment not exceeding ten days, or both, at the discretion of the court.”
 

 “125.
 
 Nothing shall be construed or taken to be a contempt of court by an attorney, but what shall be said, done or committed directly in the presence or hearing of the court, during the sitting of the same; and which shall abuse, vituperate or insult any
 
 judge of the court, or
 
 any other- person in
 
 or belonging to
 
 the court, or resist the authority
 
 or interrupt the proceedings
 
 thereof.
 
 (Underscoring ours.)
 

 “Nor shall any attorney be otherwise punished for any contempt of court, or for any other cause than_ is specified in this and the preceding section. Nothing in this section shall be so construed as to alter the law for the punishment of persons not obeying any summons, writ or order issuing from any court of record in this State.”
 

 Section 4 of Rule X of this Court reads:
 

 “The language used in any brief or
 
 document filed in this court must be courteous, and free from insulting or irrelevant criticism of any person, individually or officially,
 
 or of any class or association of persons,
 
 or of any court of justice,
 
 or other institution. Any violation of this rule shall subject the author or authors of the brief or document to the humiliation of having the brief or document returned, and to punishment for contempt of the authority of the court.” (Italics ours.) See, also, Articles 130, 131 and 132, Code of Practice.
 

 Returning now to the provisions of Revised Statutes § 125, it appears that an attorney-at-law may be adjudged guilty of contempt of court for any act committed directly in the presence of the court during the sitting of the same whereby the authority of the court is resisted or any person in the court shall be abused, vituperated or insulted.
 

 
 *1051
 
 The provisions of Section 4 of Rule X of this Court require members of the bar in writing briefs or drafting documents to be filed here to use courteous language free from insult or irrelevant criticism of any person, individually or officially, or any court of justice.
 

 The purpose of the provisions of Revised Statutes § 125 and those of Section 4 of our Rule X is to protect persons in the court from irrelevant 'criticism, abuse, vituperation and insult. Therefore, we do not see any conflict between the provisions of our Rule and those of Revised Statutes § 125.
 

 After the Court of Appeal refused to grant the defendant’s clients a rehearing, he notified the judges of the Court of Appeal and opposing counsel of his intention to apply to this Court for relief, as required by Section 2 of our Rule XIII. The application or petition for the writ of review to the Court of Appeal of the First Circuit recited that the proper notice was served on the judges and the document was filed in this Court when it was in session. It was considered by us while we were in session and it was refused by us while we were actually on the Bench on the ground that only a question of fact was presented therein. The defendant’s signature is on the petition containing the alleged offensive language. He admitted that he prepared the application for the writ and stated that he has neither any retraction to make nor apology to offer. While it is true that he and the respondent Court of Appeal judges who were attacked were not physically present in this Court at the time we considered and acted upon the petition for the writ of review, in legal contemplation they were in court. The defendant was legally before the Court because he prepared, signed, and filed the application here. The respondent judges of the Court of Appeal were legally in court because he notified them that he was invoking the jurisdiction of this Court and in his petition he challenged and attacked the validity of their official acts in annulling the judgment which he had secured in his clients’ favor in the district court. It was the action of the defendant that brought the respondent judges into this Court to have reviewed the validity of the judgment of their court. Since, legally speaking, the two judges of the Court of Appeal, who are alleged to have been insulted, vituperated and abused, were in this Court, they were entitled to the protection granted to them by our rules and by the provisions of Revised Statutes § 125 just the same as the defendant was entitled to that same protection.
 

 The basis for the rule of contempt against the defendant is that he defied and resisted the authority of this Court and affronted its dignity by disobeying and disregarding Section 4 of Rule X. In filing his application or petition for a writ of review for us to read and consider and by placing therein language which is in violation of Section 4 of our Rule X, he committed an act directly in the presence of the Court that is contemptuous because he resisted the Court’s authority. In filing the petition for the writ of certiorari or review of the judgment of the Court of Appeal here, it was the defendant’s intention to bring directly to the attention of the justices of this Court, while in session
 
 *1053
 
 and sitting, his alleged complaint of the invalidity of the judgment of the. Court of Appeal and the main basis for relief, that is, the alleged abusive, vituperative and insulting language concerning two of the members of that court.
 

 In State v. Soule, 8 Rob. 500, the attorney placed in an application or petition for rehearing certain language considered offensive to the members of the Court. He was arrested on a charge of contempt of court and made the point that the court was not in session or sitting when the application for the rehearing- was filed. The Court pointed out that under the law, had to be in session or sitting in order for it to consider the application and, therefore, overruled the defense. See also State v. Garland, 25 La.Ann. 532, State v. Redmond, 9 La.Ann. 319, and State v. Reeves (In re Stewart), 189 La. 560, 180 So. 409.
 

 It is our opinion that our authority and jurisdiction to punish for contempt of court for violating Section 4 of Rule X is within the provisions of- Revised Statutes § 125 and that Section of the Rule in no way conflicts with Revised Statutes § 125 nor Section 17 of Article 19 of the Constitution of this State.
 

 It is obvious that Section 4 of our Rule does not violate Sections 3 and 5 of Article I of the Constitution, granting respectively to persons the right of freedom of speech or to petition for redress of any wrong. The purpose of the Section of the Rule is to have the business of the Court conducted in an orderly, proper and courteous manner and to eliminate 'unnecessary abuse and insult by prohibiting reference to irrelevant matters. If counsel for litigants were permitted to engage in abuse, vituperation and insults by referring to extraneous matters which are not pertinent to the issues in the case on the theory that he is guaranteed the right of free speech, there could not be proper procedure and decorum in any court. In the interest of orderly administration of justice Section 4 simply requires those who file briefs and documents in this Court to refrain from irrelevant criticism and abusive language. State v. Nunez, 147 La. 394, 408, 85 So. 52.
 

 The Rule clearly does not in any way restrict a complainant seeking redress of a wrong. He has every opportunity to completely and fully present to us alleged irregularities or illegalities or any alleged erroneous ruling or judgment of any court for correction, and in doing so he has the right to refer to anything pertinent thereto no matter how offensive it may be.
 

 From what we have already stated, it appears that the exceptions of no right and no cause of action are without merit.
 

 The point that the Court must order the return of the document filed in violation of Section 4 of Rule X before it has authority to punish for contempt is without any foundation whatsoever. We intentionally refrained from returning the petition for the writ of certiorari to the defendant because his innocent clients would have been deprived thereby of an opportunity to have this Court consider their application for the writ of review. • The Constitution provides that a litigant who has an adverse judgment against him in the Court of Appeal has thirty days from the
 
 *1055
 
 date, of the refusal of a rehearing to apply to this Court for a writ of review. LaCaze v. Hardee et al., 199 La. 566, 6 So.2d 663. This period of time had elapsed and if we had returned the petition for the writ, another one could not have been filed timely.
 

 The Rule specifically provides a double penalty — first, the humiliation of the return of the document and, second, punishment for contempt. The members of this Court have the right to decide whether they will impose a single or dual penalty and are obviously not estopped from imposing any penalty just because they decide not to inflict both penalties.
 

 The defendant says that his words are not abusive, vituperative and insulting per se and that his statements are true.
 

 Paragraphs 8 and 9 of the petition for the writ of review read:
 

 “8. That Judge Dore the organ of the Court is the same person ' who formed part of the ‘Round Robin Table’, and who took the position that regardless of the law and the evidence, they would not render any impeachment judgment, and that he has taken a similar attitude in this case and refused to consider the evidence, the law or the finding of the trial judge but reversed the trial judgment, on a theory, in violation of the jurisprudence, and even of judgments rendered on the same day.
 

 “9. That Judge LeBlanc has a son located in Donaldsonville, Louisiana, practicing law as the junior member of the firm of Blum & LeBlanc, and therefore in competition with petitioners’ attorney, and although the law does not force him to recuse himself, under the circumstances, he should have so recused himself, in order that petitioners who are an old couple, should not be denied justice in violation of the jurisprudence of this State.”
 

 The majority opinion of the Court of Appeal shows that the author thereof, Judge Dore, analyzed the testimony and evidence in the case in arriving at the conclusion which is contrary to that reached by the trial judge. The defendant’s statement is, therefore, untrue that the Court refused to consider the evidence in the case and reversed the trial judge, in violation of the jurisprudence. The judges of the Court of Appeal are required under the Constitution and laws of this State to review the finding of fact of the trial judge in damage suits and to annul the judgments in the event they are manifestly erroneous. Two of the judges (Dore and LeBlanc) of the Court of Appeal were of the opinion that the trial judge erred in finding that the plaintiffs had successfully borne the burden of proof ■ of establishing the defendant’s negligence. The other judge (Ott) of the Court of Appeal found that the evidence was sufficient to uphold the trial judge’s views. We denied the application for a' writ of review on the ground that only a question of fact was presented — which means that no error of law was pointed out. Clearly the defendant’s other statements about Judge Dore were irrelevant and immaterial to the question presented as to the correctness or incorrectness of the judgment of the Court of Appeal. With reference to the derogatory statements about Judge LeBlanc, we observe that his son was hot an attorney in this case and,
 
 *1057
 
 therefore, there was no reason why he (Judge LeBlanc) should have recused himself. In fact, no effort was made by the defendant to have either of these judges recused. We are at a loss to understand on what theory Judge LeBlanc should have recused himself. Even if his son is a competitor of the defendant attorney, the judge’s son was in no way interested in the outcome of the litigation either as an attorney .or personally. Certainly, these statements about Judge LeBlanc and his son are entirely irrelevant to the issue presented. The defendant has not made any attempt to show in what way his clients were denied justice by Judge LeBlanc simply because his son was a practitioner at the Bar and a competitor of the defendant in the profession. It is our opinion that the defendant’s statements are abusive, vituperative and insulting. Any doubt which we might have entertained on that score was entirely eliminated by the final statement of the defendant in his return to the rule for contempt and in his oral statement before the Court, both of which have already hereinbefore been recited.
 

 . The defendant has not shown a repentant attitude or disposition. He has remained adamant and determined not to recede from his position and he will neither retract his statements nor apologize for having placed them in his application for a writ. In so far as this Court is concerned, he persists in defying and resisting its authority and flouting its dignity, for, in his return, he stated if this Court “ * * * wishes to leap over the restrictions placed upon it by- the Constitution and Statutes and the privileges and guarantees granted litigants, then I must say that-1 have no apology or retraction to make, and that I would rather be punished for contempt * *
 

 The members of this Court have no desire to or intention of leaping over constitutional and statutory restrictions on our authority to punish or injure anyone. It has always been our policy to be lenient with litigants and members of the Bar who, in the heat of argument or the excitement or disappointment in litigation, have transgressed but later expressed their regrets. That is not the case here because even after the attorney’s wrongful act was called to his attention by us, he persisted therein. Under these circumstances, there is no alternative for the Court except to maintain its authority and dignity by imposing upon the defendant a proper punishment for his deliberate and'willful acts of contempt of court.
 

 It is our judgment that the defendant is in contempt of court and the sentence is that he, C.' A. Blanchard, be imprisoned twenty-four hours in the Parish Prison of the Parish of Orleans and that he pay a fine of $50 and the costs of this proceeding.