478 So.2d 1008 (1985)
Gary M. LOVE, Plaintiff-Appellant,
v.
Roxan BADEN, Defendant-Appellee.
No. 84-821.
Court of Appeal of Louisiana, Third Circuit.
November 20, 1985.
*1009 James M. Buck, Alexandria, for plaintiff-appellant.
David A. Sheffield, Alexandria, for defendant-appellee.
Before DOMENGEAUX, LABORDE and KNOLL, JJ.
KNOLL, Judge.
This is a joint custody case in which Gary M. Love (hereafter father) appeals the trial court judgment finding him in contempt of court for failing to return his minor children to his ex-wife, Roxan Baden (hereafter mother) at the end of his pre-Easter holiday visitation. The father contends the trial court erred: (1) in conducting the hearing on the rule for contempt of court in complete abrogation of existing court rules; (2) in failing to recuse itself when it was apparent that the judge would be called as a witness; (3) in holding him in contempt of its order concerning visitation privileges when the order was obviously ambiguous; and (4) in conducting the hearing when the judge's pro tempore appointment had expired. We affirm.

FACTS
In a judgment of joint custody rendered in December 1983 by Judge William Culpepper sitting pro tempore, the mother was awarded physical custody of the two children during the school year from September through May. During this time, the father had visitation rights as specified in the judgment.
In the judgment on application for new trial, rendered in March 1984 by Judge Culpepper, the judgment of joint custody was amended to provide:
"The pre-Easter holiday period shall begin at 5:00 o'clock p.m. on the day school lets out and continue until 5:00 p.m. on the middle day of the Easter holidays from school, and post-Easter holiday period shall begin at 5:00 o'clock p.m. on the middle day to the Easter holidays from school and continue until 5:00 o'clock p.m. on the day before school reconvenes."
The amended judgment did not provide for the transportation of the children. The transportation clause is contained in the original judgment of joint custody and provides as follows:

"As to transportation arrangements and expenses, GARY [the father] will be responsible to pick up and deliver the children on the occasions when he is exercising his right to physical custody or visitation, and likewise ROXAN [the mother] will be responsible for transportation and picking up and returning the children to GARY [the father] when she is exercising her right to physical custody or visitation." (Emphasis added.)
*1010 The father picked up the children from their mother's residence in Pineville at 5:00 p.m. on the Friday they got out of school for the 1984 Easter holiday and brought them to his residence in Baton Rouge. He failed to return the children to their mother's residence on the "middle day" of the pre-Easter holiday because he interpreted the judgment to mean that the mother was obligated to pick up the children at his residence in Baton Rouge. The father eventually returned the children to Pineville on Easter Eve.
The mother brought the rule for contempt of court, attorney's fees and court costs, based on the father violating the joint custody order, particularly relative to picking up and delivering the children when he is exercising his visitation rights. The trial court found the father guilty of contempt and sentenced him to pay a $100 fine, which was suspended conditioned upon his future compliance with the provisions of the joint custody judgment. The court further ordered him to pay the mother's attorney's fees of $750 and all costs of the rule.

COURT RULES
The father contends that the hearing on the rule for contempt was conducted in complete abrogation of existing court rules. He objected to the hearing, relying on Rule VI of the Rules of the Ninth Judicial District Court, which provides in pertinent part:
"B. On each Thursday, the Clerk shall publish a list of all rules, motions, and similar matters to be heard on the Monday eleven days later.
Each Thursday at 9:00 A.M., the Clerk will take from the list as heretofore published those matters remaining for hearing, place their docket numbers in a container, draw the cases therefrom by lot, and allot them to the Judges who will be sitting on the Civil bench. The Clerk will then prepare the necessary dockets, post a copy on his bulletin board and on the appropriate Civil Court Room bulletin boards, and send a copy to each of the Judges sitting on the Civil bench."
In overruling the objection, Judge Culpepper explained:
"... as to the objection that ... uh ... the rules of the Ninth Judicial District Court were not followed ... uh ... uh... in that this matter should have been set on a regular rule day ... uh ... counsel for Mrs. Baden called me and asked me what day I would have available to hear this matter ... uh ... and I was going to be out ... I'm going to be out of town the next week ... the next two (2) weeks and so he suggested we... we set it some morning during the week which ... uh ... and service was made and all parties are here presented by counsel. So I see ... I see no objection to hearing it today and I see no objection to my hearing it, since it's a matter ... uh ... which is ... uh ... that I heard while I was sitting on a Ninth Judicial District Court and it's a matter involving a judgment which I rendered."
The local rules of court are intended to aid in the orderly conduct of litigation and are not to be construed so literally as to defeat their intended purpose. See Ulmer v. Baton Rouge Gen. Hospital, 361 So.2d 1238 (La.App. 1st Cir. 1978) and Caston v. Woman's Hospital Foundation, Inc., 243 So.2d 872 (La.App. 1st Cir.1971). In the case before us, it is apparent that counsel for both parties were prepared for a hearing on the rule. Clarification of the terms of the judgment was a matter which deserved the judge's immediate attention, since the father had upcoming scheduled weekend visitations and this incident was likely to recur. To prolong the hearing until Judge Culpepper's return would defeat the intended purpose of the rule, which is to conduct litigation in an orderly, efficient, and timely manner. Since both parties received adequate notice and neither party was prejudiced by the hearing date, we find, and the record so supports, that the trial court did not commit error in overruling the objection.

*1011 RECUSATION
LSA-C.C.P. Art. 151 specifically lists the grounds upon which a judge may be recused in a civil case, as follows:
"A judge of any court, trial or appellate, may be recused when he:
(1) Is a material witness in the cause;
(2) Has been employed or consulted as an attorney in the cause, or has been associated with an attorney during the latter's employment in the cause;
(3) At the time of the hearing of any contested issue in the cause, has continued to employ, to represent him personally, the attorney actually handling the cause (not just a member of that attorney's firm), and in this case the employment shall be disclosed to each party in the cause;
(4) Has performed a judicial act in the cause in another court;
(5) Is the spouse of a party, or of an attorney employed in the cause; or is related to a party, or to the spouse of a party, within the fourth degree; or is related to an attorney employed in the cause; or to the spouse of the attorney, within the second degree; or
(6) Is interested in the cause."
These are the sole and exclusive grounds for recusation of a judge in a civil matter. Bias, prejudice, and impartiality are not statutory grounds for recusation in a civil case. Rollo v. Dison, 402 So.2d 122 (La. App. 2nd Cir.1981), writ denied, 404 So.2d 265 (La.1981). There must be a statutory ground for recusing a judge. Shreveport Long Leaf Lumber Co. v. Jones, 188 La. 519, 177 So. 593 (1937); State v. Chantlain, 42 La.Ann. 718, 7 So. 669 (1890).
LSA-C.C.P. Art. 154 provides the procedure for recusation, as follows:
"A party desiring to recuse a judge of a district court shall file a written motion therefor assigning the ground for recusation. This motion shall be filed prior to trial or hearing unless the party discovers the facts constituting the ground for recusation thereafter, in which event it shall be filed immediately after these facts are discovered, but prior to judgment. If a valid ground for recusation is set forth in the motion, the judge shall either recuse himself, or refer the motion to another judge or a judge ad hoc, as provided in Articles 155 and 156, for a hearing."
In the instant case, the father contends the trial judge should have recused himself because it was apparent that he would be called as a material witness in the cause, since the judge held conversations with the mother, her attorney, and the father's attorney during the Easter holiday period in question. The record shows that the father failed to file a written motion, assigning the ground for recusation, either prior to trial or prior to judgment, as required by C.C.P. Art. 154. Therefore, we dismiss this issue for noncompliance with Article 154. However, under the circumstances of this case, we find it appropriate to make the following comments.
It is undisputed that both attorneys and the mother contacted Judge Culpepper during the Easter holiday period. The record clearly reflects that Judge Culpepper told all parties that any question concerning the interpretation of the judgment of joint custody would have to be resolved through legal proceedings. The father contends that the judge's conversations with the mother and her attorney had the appearance of special treatment and judicial impropriety. The record is void of any evidence that would support this contention. Further, this does not constitute a statutory ground for recusation. Since Judge Culpepper was not a witness in the cause, and none of the other grounds listed in Article 151 were asserted, we find no statutory ground existed which would require recusation.

AMBIGUITY OF JUDGMENT
The father contends the trial court erred in holding him in contempt of its order concerning visitation privileges when the judgment was obviously ambiguous and subject to any number of interpretations by reasonable men. Specifically, he *1012 argues that the transportation provisions for the Easter holidays are ambiguous. We disagree. The judgment states clearly and unequivocally that the father is "responsible to pick up and deliver the children" on the occasions when he is exercising his visitation rights. Since the mother has custody of the children during the school year, which includes the Easter holiday, the father is responsible to pick up and deliver the children when exercising his right to visitation during this period. Further, convincing evidence contra to this contention is that the father routinely picked up and delivered the children for 9 years prior to this incident. Therefore, we reject the father's claim of ambiguity and we are in accord with the trial court's finding of contempt.

AUTHORITY TO CONDUCT HEARING
The father contends the trial judge erred in conducting the hearing when the judge's pro tempore appointment term had expired on January 1, 1984. The record is void of any evidence concerning Judge Culpepper's term. The Court of Appeal cannot consider evidence that is not in the record. Promise v. McGlothin, 460 So.2d 84 (La.App. 3rd Cir.1984). Further, it is well settled that the trial judge presiding over the court when some rule or order is rendered is the proper party to try the person allegedly disobeying that rule or order. LeBlanc v. LeBlanc, 472 So.2d 312 (La.App. 3rd Cir.1985); Discon v. Saray, 272 So.2d 439 (La.App. 1st Cir.1973), writ denied, 273 So.2d 299 (La.1973); Spencer v. Dixon, 248 La. 604, 181 So.2d 41 (1965). Hence we conclude that the trial judge would have continuing jurisdiction in the instant case even if his term had expired.
We further note that the trial judge's appointment cannot be attacked collaterally. State v. Schuermann, 146 La. 110, 83 So. 426 (1919). Our jurisprudence is of long standing, and has consistently been followed, that a judge acting under color of right has authority, capacity and right to perform his judicial duties; the only method of attack upon the right of a judge to sit ad hoc who exercises the duties of an office under color of appointment or election is by quo warranto proceedings filed against him. City of Baton Rouge v. Cooley, 418 So.2d 1321 (La.1982); State v. Sadler, 51 La.Ann. 1397, 26 So. 390 (1899); State v. Lewis, 22 La.Ann. 33 (1870). Therefore, we further conclude that this issue is not properly before us.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to the appellant, Gary M. Love.
AFFIRMED.